**Cecilia ESTEVEZ and Raul Estevez, Plaintiffs,**

v.

**Jose MATOS and Maria Matos, a/k/a Mirope Matos, Defendants.**

**No. 87 Civ. 4390 (PNL).**

United States District Court, S.D. New York.

Jan. 27, 1989.

Kevin Concagh, New York City, for plaintiffs.

Thomas D. Hughes, Lawlor & Caulfield, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

BARBARA A. LEE, United States Magistrate.

This is a diversity action for personal injuries, seeking a multi-million dollar recovery for a fractured ankle sustained when plaintiff Cecilia Estevez slipped and fell on defendants' property. The case is before me for all purposes, the parties having filed their consent to trial before a magistrate pursuant to 28 U.S.C. § 636(c). Discovery is complete except as directed by this order. For the reasons stated below, the parties are to exchange statements of the witness Miriam Martinez, and plaintiff Cecilia Estevez is to submit to X-ray examination by defendants' physician.

## BACKGROUND

The parties have submitted slightly different versions of facts to which they have supposedly stipulated, but it appears to be undisputed that Mrs. Estevez was injured on November 8, 1986, at the foot of an outside staircase leading to a basement apartment in defendants' building; that there was a brick landing and a drainage hole at the foot of the stairs at the time of the accident; and that plaintiff injured her ankle and was removed by ambulance to the hospital. Although not stipulated, it appears undisputed that Ms. Estevez was nine months pregnant at the time of the accident; and that treatment of her injuries was in part postponed until after the birth of her child several days later. The exact nature of the injuries claimed is not clear from either the pleadings or plaintiffs' proposed pretrial order.

Facts very much in dispute are whether the drainage hole was covered or uncovered, and if uncovered whether defendants had notice of the condition prior to the

accident. Some time after the accident, the parties obtained conflicting statements on that subject from Miriam Martinez, one of the occupants of the basement apartment near the site of the accident. The date of the statement obtained by plaintiffs' attorney does not appear from the papers before me, but that statement apparently supports plaintiffs' theory that the drainage hole was uncovered for a period of time before the accident. Defendants' investigators got a different story from Ms. Martinez. In his affidavit in opposition to the instant motion, defendants' attorney states that on February 2, 1988, he received two statements of Ms. Martinez, taken by his investigators. One "concerned the fact that Ms. Martinez never saw the drain hole uncovered"; the other "concern[ed] a solicitation attempt by Mrs. Estevez."

The existence of the second statement, relating to possible subornation of perjury, was apparently first disclosed at a pretrial conference before Judge Daronco on February 4, prior to the parties' consent to trial before a magistrate. After a heated dispute about whether Ms. Martinez's statements were discoverable, defendants' counsel submitted them, together with translations, to Judge Daronco for *in camera* inspection. Whether the statement taken by plaintiffs' attorney was also submitted, or whether Judge Daronco in fact examined any of them before his death, does not appear of record. In any event, by the time the parties appeared before me for a pretrial conference on October 17, no statement of Miriam Martinez had been produced by either party for the other.[1]

Meanwhile, during the continuing argument about production of statements whose admissibility is doubtful, *see* Fed.R. Evid. 801(c) and (d), neither party had taken the deposition of Miriam Martinez and it was at best uncertain whether defendants

intended to call her as a witness at trial.[2] I directed that plaintiffs make reasonable efforts to take Ms. Martinez's deposition before making any Rule 37 motion based on defendants' refusal to produce her statements. Plaintiffs in fact deposed Ms. Martinez on November 10, 1988. She professed lack of knowledge or recollection in response to all material questions concerning her statement to defendants' investigators, including whether she gave one statement or two; she could not even recall the name of the "friend" who was with her at the time she was interviewed. On the underlying issue of whether she was offered anything by plaintiff in exchange for her testimony, Ms. Martinez testified that "... she not offered [*sic*] me money.... She didn't offer me money. She offered me furniture and that's all"; that she did not know why the furniture was offered and understood it to mean "nothing"; and that "... she told me she would offer me furniture, but she didn't say anything else, or what it was for or anything else, or what it was for or anything like that." All of counsel's efforts at follow-up questions to probe these assertions were stymied by responses of "I don't know" and "I don't remember."

Plaintiffs now move, in part on the basis of Ms. Martinez's deposition, for an order pursuant to Rule 37, Fed.R.Civ.P., precluding defendants from using either Ms. Martinez's statement or her testimony at trial; or in the alternative directing production of her statement and a "continued deposition."

Meanwhile, a separate dispute arose between the parties concerning plaintiffs' X-rays, which appear to have been lost in the course of transmittal from plaintiffs' treating physician to defendants' expert. It appears undisputed that defendants' messen-

---

**1.** Defendants' attorney, in his affidavit, makes much of the fact that plaintiffs made no formal motion for production of the Martinez statements. In light of this district's emphasis on informal resolution of discovery disputes, evidenced by the local rules requiring conferences between counsel and informal applications to the court, Civil Rule 3(f), 3(*l*), S.D.N.Y., that formalistic argument is unpersuasive. Plain-

tiffs' delay in seeking resolution of this dispute by appropriate means is a more significant consideration, as discussed below.

**2.** She is, however, so listed in "Defendants' Pre-Trial Order" filed October 20, 1988, and plaintiffs proceed at their peril if they assume otherwise.

ger picked up two envelopes at the office of the treating physician on Friday, November 11; and that no X-rays were in the envelopes when they were opened at the office of defendants' expert on Monday, November 14. The parties have submitted conflicting evidence on the issue of who was at fault. In any event, what is undisputed is that the lost X-rays were the only ones in existence relating to the injuries sued upon. Defendants accordingly move for an order requiring Mrs. Estevez to submit to new X-rays, pursuant to Rule 35, Fed.R.Civ.P., or in the alternative for an order precluding plaintiffs' expert from testifying about findings based on the lost X-rays.

## DISCUSSION

### 1. Plaintiffs' Motion.

The discoverability of a witness' statement is governed by Rule 26(b)(3), Fed.R. Civ.P., which provides in pertinent part that a party may obtain discovery of documents (other than discovery of experts)

prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

There is no suggestion that the statements obtained by defendants from Ms. Martinez include any "mental impressions" or other material within the last sentence. On the contrary, the record makes clear that the statements are entirely factual. In these circumstances, the purpose of shielding the statements from

discovery in the absence of "substantial need" is to require each side to do its own work, at its own expense, and to prevent a less diligent party from, in Justice Jackson's much-quoted phrase, "perform[ing] its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (concurring opinion); *see generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2021 at 179 (1970) and cases cited. The drafters of Rule 26(b) in its present form characterized the "requirement of a special showing for discovery of trial preparation materials" as "reflect[ing] the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." Fed.R.Civ.P. 26 advisory committee's note to 1970 amendment, 48 F.R.D. 487, 501. In short, the work product doctrine is intended to prevent a party from enjoying a "free ride."

But the protection of Rule 26(b)(3) is not unqualified, and the written statements of non-party witnesses as to the facts may be discoverable if the elements of "substantial need" and inability to obtain the substantial equivalent of the materials by other means are present. *Carter–Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 553 F.Supp. 45, 50–51 (S.D.N.Y.1982); *In re Grand Jury Subpoena Dated December 19, 1978*, 81 F.R.D. 691, 695 (S.D.N.Y.1979); *Xerox Corp. v. International Business Machines Corp.*, 64 F.R.D. 367, 375–82 (S.D.N.Y.1974); *Teribery v. Norfolk & Western Ry. Co.*, 68 F.R.D. 46 (W.D.Pa. 1975).

The credibility of both plaintiff Cecilia Estevez and the witness Martinez will be central issues at trial. In addition, Mrs. Estevez's credibility has been drawn in question in circumstances that require plaintiffs' attorney to satisfy himself that he may call her as a witness consistent with his obligations under Canon 7 and EC 7–26. He cannot make a reasoned professional judgment on that sensitive issue on

the basis of accusation and innuendo; only the actual statement of the witness will permit him to decide whether further investigation is necessary. This alone would support a finding of "substantial need."

In addition, if Ms. Martinez is called by either party, her credibility will obviously be hotly contested, both on the issue of whether she did or did not see an uncovered drain and on the issue whether one of the plaintiffs attempted to influence her. On the first point, she appears to have given conflicting statements to counsel's investigators; whether she was questioned further on this point on deposition does not appear from the record before me, which includes only portions of the transcript. On the second point, her deposition testimony was at best confused, and marked by lack of recollection at key points. Whether or not her recollection is refreshed at trial by means of her earlier statements, it is apparent that her present lack of recollection makes it impossible for plaintiffs' attorney "to obtain the substantial equivalent" of her contemporaneous version of material facts by other means. *Xerox Corp. v. International Business Machines Corp.*, 79 F.R.D. 7, 9–10 (S.D.N.Y.1977); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2025 (1970).

Citing a number of elderly cases, some decided decades before Rule 26(b) was adopted in its present form in 1970, defendants argue that the possibility of impeachment, or the "mere hope" of inconsistencies in a witness' statement, is not a basis to compel production. That is not the case here. To the extent that issue turns on the questionable credibility of Ms. Martinez, her apparently conflicting contemporaneous versions of the facts going to the conditions at the time of the accident are also significant. Contrary to defendants' contentions, the record before me shows that far more is at issue here than "mere hope" of inconsistent statements. A trial under the Federal Rules of Civil Procedure is not a game of surprises, but an effort to establish the truth on the basis of all the evidence. The issue whether Ms. Martinez was improperly influenced by anyone is too serious to be tried by guesswork.

Accordingly, counsel are directed to exchange copies of all statements of Miriam Martinez obtained by or on behalf of either plaintiffs or defendants, together with English translations and the certificate upon oath of each translator on or before February 14, 1989. In the event that either party shall fail to produce the documents called for, the adverse party shall report the facts to the court by letter, no later than February 17, 1989, and may by the same letter request a hearing to determine whether sanctions should be imposed against the defaulting party, including but not limited to payment into court of a specified sum; preclusion from raising certain issues or offering evidence in support of certain defenses; or a certification of contempt pursuant to 28 U.S.C. § 636(e). Failure to report to the court pursuant to the preceding sentence may be deemed a waiver of all objections based on failure to produce any statement of Miriam Martinez.

■ Plaintiffs' alternative request for further deposition testimony from Ms. Martinez is denied. There is no basis for supposing she would have any greater knowledge or recollection at a later deposition and counsel has had ample opportunity to "make a record" on that point in the event that her recollection improves at trial. Ms. Martinez is not in any event before the court: no subpoena enforcement proceedings have been commenced against her and there is no basis for such proceedings, since she appeared for her deposition pursuant to the subpoena.

■ Nor have plaintiffs made a record entitling them to recover the expenses of bringing this motion. Rule 37(a)(4) mandates such recovery "unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." Here, plaintiffs' delay in taking the deposition of Ms. Martinez is such a circumstance. Alert counsel should have caused a subpoena to issue as soon as the charge of solicitation was first raised at the February 4 conference. Instead, following traditional State court practices emphasiz-

ing the collection and protection of statements, counsel continued to wrangle over whether the matter should be referred to the United States Attorney for criminal prosecution, instead of focusing on the remedies provided by the discovery rules for obtaining relevant evidence.[3] In these circumstances, the parties should bear their own costs.

## 2. Defendants' Motion.

■ Rule 35, Fed.R.Civ.P., authorizes the entry of an order, "for good cause shown," directing a medical examination of a party whose physical condition is in issue. Defendants have made an adequate showing of the need for X-rays. In view of the huge sums claimed as damages and plaintiffs' vagueness about the nature of Mrs. Estevez's injuries, it is hard to imagine how either party's medical experts can testify to the extent of those injuries without X-rays. This determination does not require a finding as to who was at fault for the loss of the original X-rays, since defendants would be entitled to an examination to determine the present condition of Mrs. Estevez's ankle even if the originals had not been lost. Plaintiff Cecilia Estevez must accordingly submit to X-rays by a physician designated by defendants on or before February 15. Counsel are directed to confer forthwith concerning the date and place of the examination. If they are unable to agree, defendants may specify a time and place (within the Southern District of New York) on three days' written notice. The examination may not be adjourned beyond February 15 without further order of the court, which will be entered only on motion for good cause shown. In the event that plaintiff fails to appear for examination pursuant to this order, defendants may move for appropriate relief pursuant to Rule 37(b)(2). Any such motion shall be served (by hand delivery to opposing counsel) and filed no later than close of business on February 21, returnable on any business day in ac-

cordance with the notice requirements of local Civil Rule 3(c)(1).

The more difficult question presented by the lost X-rays, not directly addressed by either party on this motion, is what proof may be admissible on the nature of Mrs. Estevez's injuries in the absence of contemporaneous X-rays taken by the treating physician. If either party contends that the admissibility of secondary evidence under Rule 1004, Fed.R.Evid., depends on a determination of who was at fault for the loss of the X-rays, a preliminary hearing may be necessary, since that issue cannot be resolved on the basis of the hearsay statements submitted on this motion. Counsel are directed to confer in an effort to stipulate concerning the admissibility of secondary evidence and to advise the court in writing by February 21 of any disputes. No formal motions *in limine* are to be filed prior to the scheduling of a conference by the court.

Since defendant's motion was made pursuant to Rule 35, the expense-shifting provisions of Rule 37(a) are inapplicable.

The trial of this action will commence on March 6, 1989 and continue from day to day until concluded. Any party may request a further pretrial conference prior to March 2, 1989, by letter specifying the matters the party request be considered at the conference.

It is so ordered.

Since this case is before me for all purposes by the consent of the parties pursuant to § 636(c), the provisions of Rule 72(a), Fed.R.Civ.P., are not applicable to this order.

---

**3.** In the continuing debate about whether diversity jurisdiction should be abolished, it is relevant to inquire what advantage the federal forum affords in a case of this kind if counsel do

not avail themselves of the procedural remedies prescribed by the Federal Rules, but instead conduct discovery in accordance with the more restrictive practice under New York law.